**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-cv-02259-PAB-SBP

MICHELLE FEGAN,

     Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

     Defendant.

---

**ORDER RESOLVING DISCOVERY DISPUTES**

---

**Susan Prose, United States Magistrate Judge**

     Plaintiff Michelle Fegan brings this first-party insurance action for underinsured motorist ("UIM") benefits under a policy issued by Defendant State Farm Mutual Automobile Insurance Company ("State Farm"). The parties have raised certain discovery disputes by means of the court's informal procedures for resolving such disputes outside the context of formal motions practice. Pursuant to those procedures, the parties submitted Joint Discovery Dispute Statements on December 16, 2024, and May 14, 2025.[1] The court conducted hearings on the disputes on January 3, 2025, and June 4, 2025, during which a number of the parties' disputes were resolved. *See* ECF No. 14; ECF No. 21 (Jan. 3, 2025 Hr'g Tr.); ECF No. 33 (June 4, 2025 Hr'g Tr.).

     In this Order, the remaining discovery disputes are resolved as follows: (1) Plaintiff's request for the claim file notes in a related third-party case is **granted**, subject to the parameters

---

[1] The court will refer to the December 16, 2024 statement as "JDS 1" and the May 14, 2025 statement as "JDS 2" where an abbreviated designation is appropriate.

defined in this Order; (2) Plaintiff's related request to depose Tony Clarkson, the adjuster for the third-party claim, is **denied without prejudice**; and (3) Plaintiff's requests for information concerning the adjuster in this action are **granted in part** and **denied in part**, as explained below.

## BACKGROUND

Plaintiff was injured in a motor vehicle accident on September 16, 2022, when the vehicle she was driving was struck from the rear by a vehicle driven by Holly May. Complaint, ECF No. 4 ¶ 5. According to Plaintiff, May has acknowledged that the accident was her fault. *Id.* ¶ 12. At the time of the accident, State Farm insured both drivers. *Id.* ¶ 16.

In this lawsuit, Plaintiff contends that State Farm has engaged in a series of delay tactics to avoid paying benefits under her policy.[2] State Farm "initially took the position" that Plaintiff did not have UIM coverage under her policy, prompting Plaintiff to retain an attorney. *Id.* ¶¶ 17-18. On January 25, 2023, Plaintiff's counsel sent a letter to State Farm "explaining how Ms. May was at fault for the car accident and providing medical records demonstrating Mrs. Fegan's injuries[.]" *Id.* ¶ 18. On January 31, 2023, Mr. Clarkson, a State Farm claim specialist, sent a letter to Plaintiff's counsel asserting that State Farm did not have "doctor records to support injury and the extent thereof," *id.*¶ 19, even though "supporting medical records had been sent by email attachment and web-link" to State Farm. *Id.* ¶ 20. On March 16, 2023, counsel sent State Farm additional medical records and, in an accompanying letter, voiced concern that "State Farm is unreasonably delaying the handling of the claim against Holly May

---

[2] The court highlights here those facts pertinent to its conclusions on the pending discovery disputes.

to avoid timely payment under Ms. Fegan's underinsured motorist coverage. I am also concerned State Farm is unreasonably forcing Mrs. Fegan to file suit against Holly May to recover her policy limits of $50,000, since Mrs. Fegan's injuries and losses obviously support damages in excess of those limits." *Id.* ¶ 21.

Additional communications followed, including one from State Farm on May 9, 2023, which Plaintiff construed as once again suggesting that she had no underinsured motorist coverage under her policy with State Farm. *Id.* ¶ 28 (stating that "our records indicate the following individuals are insured and household residents: *Brian* Fegan") (emphasis added) The same day, counsel sent a letter back to State Farm, asserting that "State Farm knows or should know it has liability under the underinsured motorist coverage for this accident," and demanding that "State Farm promptly pay its policy limits to compensate Mrs. Fegan for her damages resulting from the car crash." *Id.* ¶¶ 29, 44. Plaintiff simultaneously filed a lawsuit against May in Colorado state court. *Id.* ¶ 30. That action proceeded for nearly nine months, during which time Plaintiff responded to written discovery requests and sat for her deposition. *Id.* ¶ 36.

On December 6, 2023, Plaintiff's counsel requested that State Farm pay her the May policy limit of $50,000. *Id.* ¶ 37. This State Farm ultimately did, sometime on or after January 26, 2024—approximately sixteen months after the accident and about two-and-a-half months before the scheduled April 9, 2024 trial in the May matter. *Id.* ¶¶ 38-40.

On February 2, 2024, counsel for Plaintiff sent a letter to State Farm, asserting that "it had forced Mrs. Fegan to file a lawsuit against the at-fault party to recover benefits owed and defended the at-fault driver through the entire [] course of litigation (trial had been scheduled for April 9, 2024) until agreeing to pay Ms. May's policy limits of $50,000." *Id.* ¶ 40. Counsel

forwarded written discovery from the May litigation "and explained [Plaintiff's] claimed injuries and damages in detail." *Id.* Cindy Raines, the claim specialist for Plaintiff's underinsured motorist claim in the instant case, responded by letter dated March 14, 2024:

> Upon reviewing your demand, and the medical bills and records provided, we have concerns about the mechanism of injury for the severity of Mrs. Fegan's injuries as well as questions of the necessity, relatedness, and reasonableness of some of Mrs. Fegan's treatment, including the future surgery you are alleging. At this time there are questions as to whether Mrs. Fegan's [sic] are related to this accident only and therefore will require additional review to consider it[.]

*Id.* ¶ 43. Plaintiff's counsel responded the same day, stating that State Farm already had the records Ms. Raines referenced because it had obtained them in the May litigation. *Id.* ¶ 44. Counsel further asserted that the accident had "caused significant impairment of Ms. Fegan's quality of life," and renewed Plaintiff's "request of May 9, 2023 that State Farm promptly pay its policy limits to compensate Mrs. Fegan for her damages resulting from the car crash." *Id.*

As of July 17, 2024, when Plaintiff initiated the current litigation in Arapahoe County District Court, *id.* ¶ 45, State Farm had not replied to Plaintiff's demand. State Farm removed the case to this court on August 15, 2024. ECF No. 1. In this action, Plaintiff raises three claims: (1) breach of insurance contract, ECF No. 4 ¶¶ 48-55; (2) a common-law tort claim for bad faith breach of insurance contract, *id.* ¶¶ 56-61; and (3) a claim premised on State Farm's alleged delay or denial of UIM benefits without a reasonable basis under Colorado Revised Statutes §§ 10-3-1115 and 10-3-1116. *Id.* ¶¶ 62-72.

## ANALYSIS OF THE DISPUTES

**I.    First Dispute: Request for the Third-Party Claim Notes and Deposition of the Third-Party Adjuster**

The first Joint Discovery Dispute Statement focused on Plaintiff's requests to depose

State Farm adjusters Clarkson, Springer, and Raines, as well as the production of the claim notes

from the file in the third-party May litigation. *See* JDS 1 at 1-10; *see also* Plaintiff's Request for

Production No. 4 ("Please produce all log notes for the underlying liability claim against Holly

May."). At the January 3, 2025 hearing, as pertinent here, the court directed the parties to set the

depositions of Ms. Raines and Ms. Springer. ECF No. 19 at 2. The court also ordered the parties

to submit targeted briefing on State Farm's objections to producing the May claim file and

Plaintiff's request to depose Mr. Clarkson. *See id.* Those are the questions that remain for

resolution now.

A.      **The Parties' Arguments**

In State Farm's discovery dispute brief, it urges the court not to compel the production of

"attorney-client privileged and work product protected material in the third-party file, and [to]

preclude plaintiff from seeking to obtain that information in . . . depositions of State Farm

personnel"—including, in particular, Mr. Clarkson. *Id.* at 6. Further, according to State Farm,

"much of the information that would have been in the third-party claim [file] would have post-

dated the litigation commenced against Ms. May and, as such, it would be subject to Ms. May's

attorney-client privilege, including the work product privilege that applies to materials generated

in anticipation of litigation." *Id.* at 5 (citing *Lazar v. Riggs*, 79 P.3d 105 (Colo. 2003); *Hawkins v.

Dist. Ct. In & For Fourth Jud. Dist.*, 638 P.2d 1372, 1375 (Colo. 1982)). Per State Farm,

Plaintiff would have received those portions of the claim file in the May litigation consisting of

"non-privileged, relevant information of the type generally disclosed in third-party cases in

Colorado: the factual evidence relevant to the disputed issue of whether she was injured and to

what extent, including things like the police report, photos of the accident, and medical records

and bills, consistent with cases like *Hawkins*[.]" *Id.* at 2. State Farm does *not* contend, however, that Plaintiff would have received any portion of the May log notes she now seeks here.

Notably, State Farm's focus on privilege as precluding Plaintiff's access to the disputed information reflects a shift in its justification for resisting the production of this discovery. In its response to Request for Production No. 4, State Farm made no mention of privilege, but instead focused on that information's purported lack of relevance to the instant first-party action:

> **Request for Production 4:** Please produce all log notes for the underlying liability claim against Holly May.

> **Objection:** Defendant objects that this information *does not meet the relevancy threshold and is not discoverable. In Re Silva v. Basin Western*, 47 P.3d 1184, 1191 (Colo. 2002); *Schierenberg v. Howell-Baldwin*, 571 N.E.2d 335, 337 (Ind. Ct. App. 1991); C.R.C.P. 26(b)(3); *APL Corp. v. Aetna Cas. & Sur. Co.*, 91 F.R.D. 10, 13-14 (D. Md. 1980); *Sunahara v. State Farm Mut. Auto. Ins. Co.*, 280 P.3d 649, 657-58 (Colo. 2012).[3]

---

[3] State Farm's response states in full:

Defendant objects that this information does not meet the relevancy threshold and is not discoverable. *In Re Silva v. Basin Western*, 47 P.3d 1184, 1191 (Colo. 2002); *Schierenberg v. Howell-Baldwin*, 571 N.E.2d 335, 337 (Ind. Ct. App. 1991); C.R.C.P. 26(b)(3); *APL Corp. v. Aetna Cas. & Sur. Co.*, 91 F.R.D. 10, 13-14 (D. Md. 1980); *Sunahara v. State Farm Mut. Auto. Ins. Co.*, 280 P.3d 649, 657-58 (Colo. 2012). The instant case involves plaintiff's claim for first party, UIM benefits, under her contract with State Farm. Plaintiff did not make a claim in this lawsuit for anything having to do with the third party liability claim, nor could she. *Schnacker v. State Farm Mut. Auto. Ins. Co*., 843 P.2d 102, 104-105 (Colo. App. 1992): "The duty of an insurer to act in good faith when dealing with its insured is recognized and is implied in law as a covenant of the insurance contract. The basis for liability in tort for the breach of an insurer's implied duty of good faith and fair dealing is grounded upon the special nature of the insurance contract and the relationship which exists between the insured and insurer. *Farmers Group, Inc. v. Trimble*, 691 P.2d 1138 (Colo. 1984). That foundation obviously does not exist for a third party . . . .We . . . decline to recognize a bad faith cause of action against an insurer by a third party claimant." Ms. Fegan did not, and could not have, sued State Farm

Defendant's Responses to Plaintiff's First Set of Discovery Requests at 9 (emphasis added).

Plaintiff counters that State Farm's argument applies "the wrong standard by withholding records as if the present action is a third-party action when it is instead a first-party action." ECF No. 22 at 3. Plaintiff states that she is not raising claims against State Farm "as the third-party insurer of Holly May," but rather that she is "asserting first-party bad faith against State Farm as her first-party insurer." *See id.* Therefore, because State Farm's handling of Plaintiff's third-party claim against May allegedly amounted to "a delay tactic to justify prolonged nonpayment of" Plaintiff's first-party claim in the instant case, *id.* at 1, Plaintiff avers that she is entitled to access the May log notes and to depose adjuster Clarkson in the same manner that she could obtain such information in a first-party case. Plaintiff further argues that the legal authority to which State Farm points is distinguishable, *id.* at 3-4, and that "State Farm improperly attempts to assert attorney-client privilege and work product protection on behalf of non-party Holly May"— privileges that Plaintiff asserts State Farm has waived in any event by failing to formally raise them and by not providing a log of the allegedly privileged documents. *Id.* at 4.

B.     **Discussion**

1.     **Relevance of the Requested Information**

Because relevance is the original (and only formally asserted) basis for State Farm's resisting Plaintiff's request for the claim notes in the May third-party case—and, relatedly, any testimony from third-party adjuster Clarkson with regard to that information—the court begins

---

with respect to its role as the tortfeasor's carrier. *Constitution Associates v. New Hampshire Ins. Co.* 930 P.2d 556, 561 (Colo. 1996); *All Around Transport, Inc. v. Continental Western Ins. Co.*, 931 P.2d 552, 556 (Colo. 1996).

its analysis there. *See* Response to Request for Production No. 4 (declining to provide responsive

documents based on relevance only).

The court looks to federal law to evaluate State Farm's argument that the May claim file

notes are not relevant. It is well-established that "[t]he Federal Rules of Evidence generally

govern the admissibility of evidence in a diversity lawsuit." *Griego v. State Farm Mut. Auto. Ins.

Co.*, 839 F. App'x 258, 262 (10th Cir. 2020) (citing *Sims v. Great Am. Life Ins. Co.*, 469 F.3d

870, 877 (10th Cir. 2006)); *see also, e.g.*, *Sipes v. Allstate Indem. Co.*, No. 11-cv-02369-PAB-

KMT, 2013 WL 12441547, at *2 (D. Colo. Aug. 15, 2013) ("In diversity cases, federal law

generally governs the admissibility of evidence challenged on the basis of relevance.") (citing

*Sims*, 469 F.3d at 880).

Rule 401 of the Federal Rules of Evidence directs that evidence is relevant if "it has any

tendency to make a fact more or less probable than it would be without the evidence[.]" Fed. R.

Evid. 401(a). "Rule 401 is a liberal standard" in that it "establishes only a minimal level of

probability," meaning that "the evidence must render the asserted fact of consequence more

probable than it would be without the evidence." *United States v. Leonard*, 439 F.3d 648, 651

(10th Cir. 2006) (citing *United States v. McVeigh*, 153 F.3d 1166, 1190 (10th Cir. 1998)).

Additionally, the court frames its analysis of relevance in accordance with the dictates of Federal

Rule of Civil Procedure 26(b)(1),[4] pursuant to which the concept of relevance is "broadly

---

[4] "[P]arties may obtain discovery regarding any nonprivileged matter that is relevant to any
party's claim or defense and proportional to the needs of the case, considering the importance of
the issues at stake in the action, the amount in controversy, the parties' relative access to relevant
information, the parties' resources, the importance of the discovery in resolving the issues, and
whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R.
Civ. P. 26(b)(1).

construed": a request is considered relevant "if there is 'any possibility' that the information

sought may be relevant to any party's claim or defense." *Byron-Amen v. State Farm Mut. Auto.*

*Ins. Co.*, No. 21-cv-02364-NYW, 2022 WL 1567563, at *2 (D. Colo. May 18, 2022) (quoting

*Martensen v. Koch*, 301 F.R.D. 562, 570 (D. Colo. 2014)); *Brackett v. Walmart Inc.*, No. 20-cv-

01304-KLM, 2021 WL 1749975, at *3 (D. Colo. May 4, 2021) ("[R]elevance is not so narrowly

construed as to limit a story to its final chapter, and neither party is entitled to make it impossible

for all meaningful parts of the story to be told."). Information falling within the broad expanse of

relevance "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

Applying these standards to the question at hand, the court finds there is some possibility

that the May claim file notes will contain information relevant to the finder of fact's assessment

of Plaintiff's claims here, including her claim for bad faith breach of her insurance contract. *See*

*Goodson v. Am. Standard Ins. Co.*, 89 P.3d 409, 414 (Colo. 2004) (recognizing that, "[d]ue to the

'special nature of the insurance contract and the relationship which exists between the insurer

and the insured,' an insurer's breach of the duty of good faith and fair dealing gives rise to a

separate cause of action arising in tort") (quoting *Cary v. United of Omaha Life Ins. Co.*, 68 P.3d

462, 466 (Colo. 2003)). Based on the timeline delineated above, Plaintiff has credibly alleged,

for purposes of obtaining discovery,[5] that the insurer (1) acted "unreasonably under the

circumstances" and (2) "knowingly or recklessly disregarded the validity of the insured's claim."

*Peden v. State Farm Mut. Auto. Ins. Co.*, 841 F. 3d 887, 890 (10th Cir. 2016); *Kisselman v. Am.*

*Family Mut. Ins. Co.*, 292 P.3d 964, 970 (Colo. App. 2011) (to state a common law tort claim for

bad faith, the insured must allege facts demonstrating "that (1) the insurer's conduct was

---

[5] This court, of course, expresses no view on the merits of Plaintiff's claims.

unreasonable, and (2) the insurer either had knowledge of or reckless disregard for the fact that its conduct was unreasonable").

With this context in mind, consider, for example, a possible reference in the May log notes to an analysis by a physician retained by State Farm to evaluate Plaintiff's medical records. Such information obviously would be relevant to the instant case. Or the log notes also might reflect discussions among State Farm personnel concerning the insurer's obligations under its policy with Plaintiff—perhaps by acknowledging that the policy did in fact provide UIM benefits, notwithstanding State Farm's apparent contemporaneous disclaimers of such coverage in its communications with Plaintiff's counsel. Such communications, obviously, would be relevant to Plaintiff's claim of bad faith in this case, potentially providing factual information tending to show that State Farm acted unreasonably under the circumstances and with knowing or reckless disregard of the validity of Plaintiff's claim. The happenstance of this information being recorded in a "third party" file does not prevent its disclosure, and State Farm points to no case supporting that proposition.

The Colorado state cases on which State Farm relies—most prominently, *Sunahara* and *Silva*—create no per se bar to the discovery Plaintiff seeks. Insofar as both decisions analyze relevance in the context of third-party litigation, these cases do not bind this court, which is obliged to apply the broad federal standard governing relevance.[6] Regardless, neither *Sunahara* nor *Silva* holds that access to claim notes is categorially barred in a third-party uninsured motorist case, as State Farm implies. The Colorado Supreme Court specifically discussed a preclusion on access to an insurer's reserves and settlement authority and its underlying liability

---

[6] Neither *Sunahara* nor *Silva* addressed a claim of privilege.

assessments and fault evaluations. *Sunahara*, 280 P.3d at 658 (holding that "liability assessments
and fault evaluations underlying an insurance company's reserves and settlement authority in a
UIM action are not reasonably calculated to lead to admissible evidence[7] as required by C.R.C.P.
26(b)(1)"). And even with respect to information regarding settlement authority and reserves,
*Sunahara* recognized that such information might be relevant and subject to production where, as
in the instant matter, an insured brings a bad faith claim in a first-party case:

> [R]eserves and settlement authority—and, under our reasoning in this case, the
> liability assessments and fault evaluations underlying those figures as well—***might***
> be relevant and reasonably calculated to lead to admissible evidence when a first-
> party plaintiff sues his or her insurance company for bad faith or for a declaratory
> judgment. In bad faith . . . actions, evidence of reserves and settlement authority
> ***could shed light*** on whether the insurance company adjusted a claim in good faith,
> or promptly investigated, assessed, or settled an underlying claim. UIM actions
> differ from bad faith and declaratory judgment cases because, rather than defending
> its *own* actions, an insurance company in a UIM action must essentially defend the
> tortfeasor's behavior.

*Sunahara*, 280 P.3d at 657-658 (internal citations to *Silva* omitted) (bolded emphasis added).

Thus, even if this court were bound to follow *Sunahara*, that decision "explicitly declined
to extend its holding to situations where, as here, an insured is suing an insurer for bad faith and
the insurer's own conduct is placed at issue." *Toy v. Am. Fam. Mut. Ins. Co.*, No. 12-cv-01683-
PAB-MJW, 2014 WL 485962, at *2 (D. Colo. Feb. 6, 2014); *see also Bishelli v. State Farm Mut.
Auto. Ins. Co.*, No. 07-cv-00385-WYD-MEH, 2008 WL 280850, at *3 (D. Colo. Jan. 31, 2008)
(referencing *Silva* in ordering that the insurer "should produce its level of reserves set aside for

---

[7] Under federal law, the "not reasonably calculated" standard was rendered defunct by the 2015
amendments to Federal Rule of Civil Procedure 26(b), which require that federal courts now
analyze whether the information requested is relevant and "proportional to the needs of the
case."

this incident," and observing "that whether the loss reserves are ultimately relevant to the issue
of bad faith should be left to the district judge to determine prior to or at trial").

Stated another way, *Sunahara* and *Silva* erect no barrier to the production of any aspect
of the May claim file notes in this case in which an insured brings a first-party bad faith claim
against her insurer. Nor does the other caselaw cited by State Farm. The point here isn't that
Plaintiff would have been prohibited from bringing a direct action against State Farm in its role
as third-party carrier in the May litigation, *see* ECF No. 20 at 2-3 (discussing *Farmers Ins. Exch.
v. Dist. Ct. for Fourth Jud. Dist.*, 862 P.2d 944, 949 (Colo. 1993)),[8] or that a UIM insurer must
pay benefits "whether the insured recovers the full amount or nothing at all from the liable
party's insurer[.]" *Id.* at 5. What is determinative here is Plaintiff's assertion that State Farm
unreasonably delayed its handling of her first-party claim pending the outcome of the May third-
party case. Viewed in that context, the May log notes may contain information relevant to
Plaintiff's bad faith and unreasonable delay claims in the instant action. Considering the broad
federal definition of relevance to which this court must adhere, the undersigned respectfully finds
no justification for placing an artificial barrier between these two obviously factually-intertwined
matters.

Plaintiff points to no precedent supporting the proposition that notes from a third-party

---

[8] This court does not read *Farmers* as holding that an insured could never bring suit against the
third-party carrier, but only that the plaintiff's lawsuit in the particular circumstances there
was premature: "A trial court may not provide declaratory relief to a plaintiff who attempts to litigate
the question of the limits of an alleged tortfeasor's insurance coverage *prior to judgment against
the tortfeasor*." *See* 862 P.2d at 949 (holding that the plaintiff did not have standing to bring a
declaratory judgment action against the insurer of the tortfeasor "[u]ntil her claim is reduced to
judgment") (emphasis added). Regardless, the court's resolution of the dispute at hand does not
hinge on this point.

claim file are per se irrelevant and subject to exclusion from discovery in a related first-party

case, where the same insurer is involved and the third-party notes may bear on the questions of

bad faith or unreasonable delay in the first-party matter. Neither has this court located such a

case, after conducting extensive research across all federal jurisdictions. The court therefore

finds no basis to prohibit production of the May log notes on relevance grounds. It may be that

some portion of the notes, even if relevant evidence, ultimately might be subject to exclusion as

unfairly prejudicial. *See* Fed. R. Evid. 403. But such admissibility questions are for Chief Judge

Brimmer to address at the proper time, not for this court to decide in the context of a discovery

dispute. *See Bishelli*, 2008 WL 280850, at *3.

### 2.      Potential Claims of Privilege or Work-Product Protection

To be sure, some of the information in the May claim file notes could be protected by the

attorney-client privilege or the work-product doctrine, as State Farm now declares—albeit in a

rather sweeping and non-specific manner and without drilling down on specifics or producing a

privilege log. *See generally* ECF No. 20 at 5-6. Regardless, the court is disinclined to find, as

Plaintiff urges, that State Farm has waived these privilege arguments, *see* ECF No. 22 at 4, in

light of their having being raised in connection with the court's informal discovery-dispute

procedures, which afforded Plaintiff notice and an opportunity to respond. Accordingly, the court

will address these possible alternative grounds for exempting the May log notes from discovery.

To begin with the work-product doctrine, federal law governs the assessment of work

product issues that arise in this court, even in diversity cases like this one. *See Frontier Refining,

Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998) (referencing Fed. R. Civ.

P. 26(b)(3)); *see also Menapace v. Alaska Nat'l Ins. Co.*, No. 20-cv-00053-REB-STV, 2020 WL

6119962, at *12 (D. Colo. Oct. 15, 2020) (same). While a party may not ordinarily "discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative"—that is, work product-protected materials—"those materials may be discovered if: (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A).

Defendant State Farm bears the burden of establishing that the materials sought to be protected were prepared in anticipation of litigation or for trial. *E.E.O.C. v. Outback Steakhouse of Fla.*, 251 F.R.D. 603, 610 (D. Colo. 2008). Importantly, "[b]ecause the work product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or facts contained within work product." *Id*. (quoting *Resol. Tr. Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995)); *see also, e.g.*, *Oklahoma v. Tyson Foods, Inc.*, 262 F.R.D. 617, 627 (N.D. Okla. 2009) ("[T]he Restatement expressly excepts 'underlying facts' from work product protection. 'Work product consists of tangible material or its intangible equivalent in unwritten or oral form, *other than underlying facts* . . .'") (quoting Restatement (Third) of the Law Governing Lawyers § 87(1) (2000) (emphasis in original)).

State Farm now contends that "*much of* the information that would have been in the third-party claim would have post-dated the litigation commenced against Ms. May and, as such, it would be subject to . . . that work product privilege that applies to materials generated in anticipation of litigation." ECF No. 20 at 5 (emphasis added). Perhaps there is protected work product in the May claim file, although it is by no means a foregone conclusion that the log notes

would consist exclusively of attorney-generated strategies and impressions without reference to

the underlying facts. As State Farm's previous production of selected factual information

acknowledges, *see* ECF No. 20 at 2 (averring that State Farm has produced from the May claim

file the "non-privileged, relevant information of the type generally disclosed in third-party cases

in Colorado," ECF No. 20 at 2), facts contained in the May log notes are not shielded by the

work-product doctrine.

On this record, then, State Farm has not met its burden to demonstrate that the May log

notes, in their entirety, consist of "an attorney's strategies and legal impressions" and are devoid

of unprotected factual content. *See Resol. Tr. Corp.*, 73 F.3d at 266. The court therefore finds no

basis to conclude, on the current record, that those notes are wholly enveloped in a blanket of

work-product protection. Likewise does the court decline to make a before-the-fact proclamation

that the attorney-client privilege protects the May log notes in total.

Because subject matter jurisdiction in this matter is founded on diversity of citizenship

under 28 U.S.C. § 1332(a), Colorado law governs questions of attorney-client privilege. *See* Fed.

R. Evid. 501; *see also Frontier Refining*, 136 F.3d at 699. Like the work-product doctrine, the

privilege "protects only the communications to the attorney; it does not protect any underlying

and otherwise unprivileged *facts* that are incorporated into a client's communication to his

attorney[.]" *Gordon v. Boyles*, 9 P.3d 1106, 1123 (Colo. 2000) (emphasis added). And "[n]o

blanket privilege for all attorney-client communications exists. Rather, the privilege must be

claimed with respect to each specific communication and, in deciding whether the privilege

attaches, a trial court must examine each communication independently." *Wesp v. Everson*, 33

P.3d 191, 197 (Colo. 2001)). "The burden of establishing that a particular communication is

privileged rests on the party asserting the privilege." *Id.* at 198. As with its invocation of the
protection of the work-product doctrine, State Farm at this time has not met its burden to
establish that any portion of the May log notes must be withheld on the basis of the attorney-
client privilege.

*        *        *

Consistent with the foregoing analysis, State Farm is **ordered** to produce, **within 21 days
of the date of this Order**, the log notes from the May claim file. State Farm shall concurrently
provide a detailed privilege log covering any redacted information for which it claims the
protections of the work-product doctrine or the attorney-client privilege. If Plaintiff disputes that
any documents are properly withheld, the parties shall contact the chambers of the undersigned
by joint email, explaining their disagreement, their good-faith efforts to resolve the dispute, and
whether they believe an *in camera* review of the claim notes will be required.

As for Plaintiff's related request to depose Mr. Clarkson, the adjuster for the May third-
party claim, this request is **denied without prejudice**. The court finds it expedient to evaluate
that question following the production of the May claim file notes and the resolution of any
privilege disputes concerning that production. In that more definite context, the court will be in a
better position to evaluate whether Mr. Clarkson possesses unique, relevant information such that
his deposition would not be unreasonably cumulative of the testimony of other witnesses or
otherwise disproportional to the needs of the case.

## II.    Second Dispute: Information Concerning the First-Party Adjuster

In the second Joint Discovery Dispute Statement, the parties asked the court to resolve a
disagreement concerning State Farm's refusal to respond to one interrogatory and two requests

for production concerning Ms. Raines's work as an adjuster for State Farm:

> **Interrogatory No. 8:** Please identify the other Colorado UM/UIM lawsuits that Cindy Raines testified about being deposed in during her deposition for the present case, including the names of the parties, the names of the attorneys, the case numbers, and the venue in which the case was or is pending.

> **Request for Production 17:** Please produce all performance review documents related to Cindy Raines from the beginning of her employment with State Farm to present.

> **Request for Production 18:** Please produce the deposition transcripts of Cindy Raines from the other Colorado UM/UIM lawsuits she testified about being deposed in during her deposition for the present case.

Plaintiff contends she needs this information because Ms. Raines—whose claim handling "State Farm and Ms. Raines are resolute in defending" here—testified that she had been deposed five times (including in this case) since the beginning of her employment with State Farm in February 2023, and that it is "extraordinary for a Colorado UM/UIM adjuster to be deposed five times in two years." JDS 2 at 3. Plaintiff further asserts that the information she seeks is probative of a "*modus operendi*" suggested in Ms. Raines's apparently heavy claim load and statements indicating she checked some of these claim files only once a year. *Id.* Plaintiff says that she "should be permitted to compare Ms. Raines's statements about her claim handling, State Farm business practices, and her training with her testimony from the other Colorado UM/UIM cases to understand the credibility of her testimony in this case." *Id.*

In opposing this discovery, State Farm counters that "[t]he mere fact that a plaintiff brings a bad faith claim and deposes a claim adjuster has nothing whatsoever to do with whether claims are meritorious," and that courts have labeled discovery requests like these "fishing expeditions." *Id.* at 6. State Farm disputes that Ms. Raines's testimony in other matters is

relevant for impeachment and avers that Plaintiff has no facts to support her assertion that five depositions in two years for a claim adjuster is an "extraordinary" amount. *Id.* As for the request for performance reviews, State Farm asserts that it is overly broad, not proportional to the needs of the case, and improperly invades Ms. Raines's privacy. *Id.* at 9-10. State Farm contrasts the "extensive <u>applicable</u> legal authority" in support of its position with Plaintiff's reference to a single, out-of-Circuit case: *Harvey v. GEICO*, 259 So.3d 1 (Fla. 2018), which State Farm contends "did not even address <u>discoverability</u> of personnel files or transcripts, much less establish such information is 'commonly' used." *Id.* at 10-11 (emphasis in original).

### A.    Information from Other Lawsuits

To begin with the question of access to Ms. Raines's testimony in four other depositions, Ms. Raines recalled in her deposition in this case the month in which each of those depositions had occurred and the names of the defense counsel (who presumably represented her in those depositions and prepared her for them). She specifically named these attorneys, each of whom practices in the Denver metropolitan area:

- Karl Chambers of Patterson Ripplinger: May 2024 deposition
- Jami A. Maul of Wheeler Law: September 2024 deposition
- Rebecca Wagner of Campbell, Wagner and Frazier, LLC: December 2024 deposition:
- Sheryl Anderson of Thompson Coe: January 2025

*See* JDS 2, Ex. 1, Raines Depo. Tr. 42:25-43:17. The identification of the firms with which each counsel is currently associated was made by this court, by means of a simple internet search.

In light of this known information, the court respectfully rejects the idea, posited by defense counsel at the discovery conference, that it would be impossible to "know where to begin" to identify the basic case information sought in Interrogatory No. 8. Doing so would not

be an exceptionally burdensome task. As the deponent in each of these matters, Ms. Raines

should have reviewed the transcripts before signing them. A check of her State Farm email

account will quickly verify this point. If email communications concerning these depositions are

now inaccessible for some reason, a brief telephone call to each of the attorneys Ms. Raines

already has identified (either from Ms. Raines or defense counsel) should suffice to enable State

Farm to produce the very basic information requested concerning each matter.

The court therefore directs that State Farm provide the rest of the information Ms. Raines

partially conveyed in her deposition by responding to Interrogatory No. 8. Additionally, State

Farm shall provide the names of the court-reporting services that transcribed Ms. Raines's

deposition testimony in each case. With that information, Plaintiff can contact those services

directly to purchase copies of the transcripts, subject to any previously-applied confidentiality

redactions, if she chooses.[9] This is precisely what any litigant could do, with the name of a case

in hand. State Farm made no objection during Ms. Raines's deposition to her identifying the

other cases in which she had been deposed, nor could it have. Such information is not ordinarily

privileged, and there is nothing in the record suggesting that it would be shielded by any such

protection in this instance.

The court appreciates State Farm's argument that no negative inference should be drawn

from the number of times an insurance adjuster has been deposed, especially Colorado, where a

---

[9] This court will not deprive those businesses of their entitlement to compensation for their work
product by requiring State Farm to provide free copies of the transcripts, which might also
violate contractual obligations between State Farm and the reporters.

statute authorizes double damages in cases like this one.[10] And State Farm also may be correct that information about Ms. Raines's handling of other cases ultimately may stray so far afield as to render it inadmissible. Decisions by State Farm in those other actions likely depended on the policy language and the facts of the particular cases, which are necessarily different from the policies and facts animating this case. Here, however, where Ms. Raines already has provided a significant portion of the requested information, and producing the remainder cannot reasonably be characterized as sweeping so broadly as to be overly burdensome—this court located, with little effort, a portion of it—the question of its admissibility is properly left to another day. *See* Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable.").

State Farm therefore is respectfully **ordered to respond to Interrogatory No. 8** in accordance with the foregoing parameters **within 21 days of the date of this Order**. State Farm, however, is not required to produce copies of the deposition transcripts as requested in Request for Production No. 18.

### B. The Adjuster's Performance Reviews

What remains is the question whether to order production of Ms. Raines's performance reviews. According to Plaintiff, these documents are "directly relevant to Colorado's unfair claims settlement practices statute, C.R.S. 10-3-1104(h), which plaintiff has alleged State Farm violated," JDS 2 at 4, and would elicit information concerning "what portion of this conduct is

---

[10] Indeed, as United States Magistrate Judge N. Reid Neureiter explained in his recent statistical review of the court's work in 2024, insurance cases ranked third in number of all civil cases filed in this District, behind only civil rights/employment matters and prisoner petitions.

attributable to State Farm's training and management." *Id.* at 6. State Farm counters that the production of Ms. Raines's performance reviews "would amount to production of personnel records without a signed authorization, which would constitute an invasion of privacy," and that "employees have an expectation of privacy in their employment records." *Id.* at 10 (citing *Corbetta v. Albertson's, Inc.*, 975 P.2d 718, 721 (Colo. 1999), and *In re District Court*, 256 P.3d 687, 691 (Colo. 2011)). State Farm additionally points to Colorado statutory law generally barring the inspection of public records containing personnel files, *id.* (citing Colo. Rev. Stat. § 24-72-204(3)(a)(II)(a), and contends that Plaintiff has not shown that the adjuster's performance reviews are relevant; that their disclosure is requested to serve a compelling state interest; or that there is an otherwise compelling need for the information. *Id.* (citing *Stone v. State Farm*, 185 P.3d 150 (Colo. 2008)).

Under the Federal Rules of Civil Procedure, which govern this discovery question, a court has discretion to issue an order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," Fed. R. Civ. P. 26(c)—in essence, the relief State Farm requests in resisting production of Ms. Raines's performance reviews. In that regard, "[a]lthough privacy interests . . . are not weighed in the same way privilege claims are weighed, courts have held that where a state doctrine promotes confidentiality and does not conflict with federal interests it may be taken into account as a matter of comity." *Am. Ins. Co. v. Pine Terrace Homeowners Ass'n*, No. 20-cv-00654-DDD-MDB, 2023 WL 6796161, at *2 (D. Colo. Apr. 17, 2023) (citing *Scholl v. Pateder*, No. 09-cv-02959-PAB-KLM, 2011 WL 3704802, at *2 (D. Colo. Aug. 23, 2011); *Gottlieb v. Wiles*, 143 F.R.D. 235, 237 (D. Colo. 1992)).

Upon a review of the applicable law, the court finds that the four-factor balancing test

enunciated in *In re District Court* does not conflict with federal interests and sets forth the
governing legal framework in this context. *See id.* at *1 (applying *In re District Court* in
evaluating an argument that adjusters' performance reviews should be produced because they
"may shed light on the adjusters' knowledge and motives"). As articulated in *In re District
Court*, four factors must be satisfied before the court can order production of confidential
materials:

> The party requesting the information must always first prove that the information
> requested is relevant to the subject of the action. Next, the party opposing the
> discovery request must show that it has a legitimate expectation that the requested
> materials or information is confidential and will not be disclosed. If the trial court
> determines that there is a legitimate expectation of privacy in the materials or
> information, the requesting party must prove either that disclosure is required to
> serve a compelling state interest or that there is a compelling need for the
> information. If the requesting party is successful in proving one of these two
> elements, it must then also show that the information is not available from other
> sources. Lastly, if the information is available from other sources, the requesting
> party must prove that it is using the least intrusive means to obtain the information.

*See* 256 P.3d at 691-92. This analysis comports with the Tenth Circuit's longstanding
recognition that caution should be exercised before permitting the disclosure of information
contained in personnel files. As the Court of Appeals has observed, "personnel files often contain
sensitive personal information," and it is "not unreasonable to be cautious about ordering their
entire contents disclosed willy-nilly." *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 648-49 (10th
Cir. 2008). Caution is particularly appropriate where, as here, the personnel information at issue
concerns a non-party. *See Gateway Logistics, Inc. v. Smay*, 302 P.3d 235, 241 (Colo. 2013) ("We
also conclude that the trial court should take [the defendant's] wife's status as a nonparty into
consideration as a factor weighing against disclosure when applying the *In re District Court*

balancing test[.]").

Turning to the prongs of the *In re District Court* balancing test, the court first observes that it is respectfully unpersuaded by Plaintiff's argument that there is relevant information to be derived from Ms. Raines's performance reviews. Plaintiff asserts that these documents will shed light on unfair settlement claims practices and supposed deficiencies in State Farm's training and management, but logically, it is difficult to see how that can be so. If State Farm praises Ms. Raines's performance, that is merely consistent with its view that her claims-management practices comply with professional and legal standards, information that is neither new nor uniquely probative. To the extent Plaintiff disagrees that Ms. Raines's performance is positive, that does not mean that the reviews contain any revelatory information; it simply shows that Plaintiff takes a different view of the matter. Too, it appears unlikely that a performance review would call out Ms. Raines's work on a specific claim, and so it seems wholly speculative to suppose that a particular performance review could readily be correlated with Ms. Raines's work on the instant case. And if State Farm in some way criticizes Ms. Raines's performance in an evaluation, it is similarly unclear how that criticism might be ascribed to State Farm's "business practices," as opposed to a simple assessment of under-performance by an employee.

At bottom, an examination of the contents of Ms. Raines's performance evaluations appears more calculated to devolve to a play within a play, extraneous to the main event, than to eliciting relevant information. The court therefore finds that Plaintiff has not met her burden to prove that the information requested is relevant.

As for the second *In re District Court* factor, as previously stated, there is undoubtedly a legitimate expectation of privacy in documents in employee personnel files. *See Regan-Touhy*,

526 F.3d at 648-49.

Third, for the same reasons indicating that relevance is lacking, Plaintiff likewise has not demonstrated a compelling need for access to Ms. Raines's sensitive personnel information. She has not shown that the information could not have been gleaned from other sources. In fact, the record suggests that Plaintiff had access to this information by multiple other means, including by examining the documents contained in the claim file (in particular, the log notes) and by reviewing other business records and policies maintained by State Farm—which the record indicates State Farm has produced. *See* Defendants' Response to Plaintiff's First Set of Discovery Requests at 4-7 (referencing production of State Farm business records). Furthermore, Plaintiff had the opportunity to question Ms. Raines—and, for that matter, any other State Farm official she requested to depose—about State Farm's business practices and any guidance or directives she received from her employer with respect to her handling of Plaintiff's claim. Plaintiff also might have inquired of Ms. Raines about any criticisms or accolades she received in her performance reviews. The existence of these direct avenues for obtaining this information negates the idea that Plaintiff has a compelling need to obtain the sensitive personnel records of a non-party.

Finally, the court finds that, given the facts and circumstances of this case, Plaintiff has failed to prove that Ms. Raines's performance reviews, which indisputably contain sensitive information, are the least-intrusive means for Plaintiff to obtain information about State Farm's business practices. The content of these performance reviews, even if tangentially relevant, would be duplicative of information Plaintiff already has in her possession or readily could have obtained by means other than invading Ms. Raines's privacy interests.

Having applied the *In re District Court* factors to the record here and found that, on balance, they weigh against the production of Ms. Raines's confidential personnel materials, the court concludes that State Farm need not respond to Plaintiff's Request for Production No. 17, which seeks Ms. Raines' performance reviews from the beginning of her employment with State Farm to present.

## CONCLUSION

For the reasons set forth above, the court respectfully **ORDERS** as follows:

(1) Plaintiff's request for the claim file notes in the related third-party May litigation is **granted**, subject to the parameters defined in this Order;

(2) Plaintiff's related request to depose third-party adjuster Clarkson is **denied without prejudice**; and

(3) Plaintiff's requests for information concerning the adjuster in the instant case are **granted in part** and **denied in part**, as delineated in this Order.[11]

---

[11] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 783 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, including when a "pro se litigant has not been informed of the time period for objecting and the consequences of failing to object").

DATED: November 4, 2025          BY THE COURT:

_____
Susan Prose
United States Magistrate Judge