IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 24-cv-02259-PAB-SBP

MICHELLE FEGAN, an individual,

Plaintiff,

v.

STATE FARM AUTOMOBILE INSURANCE COMPANY, a foreign corporation,

Defendant.

---

**ORDER**

---

This matter comes before the Court on defendant State Farm Automobile Insurance Company's Motion for Partial Summary Judgment [Docket No. 42] and Motion to Exclude Opinions of John Kezer Pursuant to FRE 702 [Docket No. 41]. Plaintiff Michelle Fegan filed responses. Docket Nos. 43, 44. State Farm Automobile Insurance Company ("State Farm") filed replies. Docket Nos. 45, 46. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## I. FACTS[1]

### A. The September 16, 2022 Collision

In September 2021, Ms. Fegan reported right shoulder pain to her medical provider. Docket No. 42 at 1, ¶ 1. She indicated that her symptoms began 10 years prior and that she has the most difficulty performing a yoga position where she places her hands flat together behind her back. *Id.*

[1] The following facts are undisputed unless otherwise noted.

On September 16, 2022, Holly May crashed into the back of Ms. Fegan's vehicle. Docket No. 43 at 8, ¶ 2. Ms. Fegan experienced immediate neck pain, arm pain, and a headache. *Id.* at 9, ¶ 6. The investigating police officer documented severe damage to the front of Ms. May's vehicle and moderate to severe damage to the back of Ms. Fegan's vehicle. *Id.* at 8, ¶ 5. Both Ms. May and Ms. Fegan were insured by State Farm. Docket No. 42 at 2, ¶ 3.

On September 16, 2022, Ms. Fegan went to the Emergency Department at Littleton Adventist Hospital. Docket No. 43 at 9, ¶ 7. An x-ray of Ms. Fegan's neck showed "trace retrolisthesis of C5 on C6 and may be related to degenerative disc space narrowing at this level." *Id.* On September 22, 2022, Ms. Fegan was evaluated at Panorama Orthopedic where the Nurse Practitioner documented that "[s]he does have a history of shoulder impingement in the shoulder in this arm, which she has been treating conservatively. However, it has been exacerbated since this accident." *Id.*, ¶ 8. On September 26, 2022, Ms. Fegan was again evaluated at Panorama Orthopedic. *Id.*, ¶ 9. During her visit, Ms. Fegan described her injury as follows: "She felt like her right arm got jammed. She immediately felt pain in the right arm from the shoulder to forearm . . . . She is unable to sleep on her right side. She wakes up with her whole right arm numb. The pt reports that she feels a weakness in the right arm (like opening a jar), she has posterior pain in the right shoulder joint; like an aching. Tightness on the right side of her neck." *Id.* On October 12, 2022, Ms. Fegan was evaluated at Panorama Orthopedic by Philip York, M.D. *Id.* at 9-10, ¶ 10. To treat Ms. Fegan's neck injury, Dr. York recommended an "intralaminar injection at C7-T1 . . . . I did mention to the patient if her symptoms do not improve, it may require surgical intervention." *Id.* On

February 1, 2023, Ms. Fegan was evaluated at Panorama Orthopedic by James Johnson, M.D. *Id.* at 10, ¶ 11. Dr. Johnson documented:

> Michelle Fegan is a 44-year-old right hand dominant female with the primary complaint of right shoulder and neck pain. This began following a motor vehicle collision on 09/16/2022. She was a restrained driver and was rear-ended on the highway. She experienced a tremendous amount of neck and shoulder pain and has been seen by Dr. York, who recommended a cervical spine injection. She decided against the injection at that time and was referred to my clinic. She has decreased range of motion of her right shoulder. She has been participating in physical therapy for both her neck and shoulder. She continues to have pain and feels that her progress has plateaued.

*Id.* Dr. Johnson recommended continued physical therapy. *Id.*, ¶ 12. Dr. Johnson noted, "If her neck symptoms persist she will return to clinic for follow up evaluation with Dr. Abel. If her right shoulder symptoms persist she will contact us and we will order an MRI." *Id.*, ¶ 12.

**B. <u>Ms. Fegan's Third-Party Claim</u>**

On March 16, 2023, in connection to Ms. Fegan's third-party claim against Ms. May, Ms. Fegan's counsel sent a demand to State Farm for the limits of Ms. May's liability policy. Docket No. 42 at 2, ¶ 4. In the March 16, 2023 letter, Ms. Fegan's counsel stated:

> I am concerned State Farm is unreasonably delaying the handling of the claim against Holly May to avoid timely payment under Ms. Fegan underinsured motorist coverage. I am also concerned State Farm is unreasonably forcing Ms. Fegan to file suit against Holly May to recover her policy limits of $50,000, since Ms. Fegan's injuries and losses obviously support damages in excess of those limits.
>
> . . .
>
> We request that State Farm promptly pay its policy limits from the claim against Holly May and further evaluate the claim under Ms. Fegan's underinsured motorist coverage.

Docket No. 42-3 at 2; Docket No. 42 at 2, ¶¶ 5-6; Docket No. 43 at 3, ¶¶ 5-6.[2] On April 10, 2023, State Farm Liability Claim Specialist Tony Clarkson acknowledged the settlement demand from March 16, 2023 and offered $11,000. Docket No. 42 at 2, ¶ 8. On April 13, 2023, Ms. Fegan's counsel sent a letter to Mr. Clarkson, asserting that Ms. Fegan's damages from the accident exceed Ms. May's policy limits. *Id.* at 3, ¶ 10.

On May 13, 2023, Mr. Clarkson acknowledged receipt of Ms. Fegan's demand.[3] Docket No. 42 at 4, ¶ 19. Mr. Clarkson extended a settlement offer for $12,744 and requested that Ms. Fegan participate in an independent medical examination ("IME") if the offer was not accepted. *Id.* Mr. Clarkson also observed that it appeared that the minor damages did not appear to warrant policy limits. *Id.* In January 2024, State Farm agreed to pay Ms. May's policy limits of $50,000 to Ms. Fegan.[4]

### C. <u>Ms. Fegan's First-Party Claim</u>

On April 7, 2023, in connection with Ms. Fegan's first-party claim with State Farm, Ms. Fegan's counsel sent State Farm a letter, requesting a "statement under C.R.S. § 10-3-1117 setting forth . . . information with regard to each known policy of insurance related to Michelle Fegan." Docket No. 42 at 2, ¶ 6; Docket No. 43 at 3, ¶ 6;

---

[2] The parties selectively quote from the March 16, 2023 letter, but do not deny the text of the letter. *See* Docket No. 42 at 2, ¶ 5; Docket No. 43 at 3, ¶ 5. Therefore, the Court will deem the text of the March 16, 2023 letter as undisputed. *See* Docket No. 42-3 at 2.

[3] On May 9, 2023, Ms. Fegan filed a complaint in Colorado state court against Ms. May, alleging that Ms. May was negligent. While the parties do not assert this as an undisputed fact, the Court finds that this fact is undisputed as the parties agree that Ms. Fegan filed suit against Ms. May. *See* Docket No. 4 at 5, ¶ 30; Docket No. 42 at 10-11.

[4] The parties do not assert as an undisputed fact that State Farm ultimately paid Ms. May's policy limits in the amount of $50,000 to Ms. Fegan. Nevertheless, the Court finds that the parties do not dispute this fact. *See* Docket No. 42 at 16; Docket No. 43 at 6, ¶ 19.

Docket No. 42-4 at 1.[5] The subject line read, "Policyholders Brian and Michelle Fegan, State Farm claim number 06-39H-505S." Docket No. 42-4 at 1. On April 12, 2023, Underinsured Motorist ("UIM") Claims Specialist Amber Springer sent Ms. Fegan's counsel a letter that read:

> State Farm is in receipt of your April 7, 2023 correspondence. Please note that I am the adjuster assigned to assist your client in the handling of any potential underinsure[d] motorist claim. If you have questions regarding the medical payments portion of the claim, you can reach the handling team at (844) 292-8615 ext. 522.
>
> Under policy 4186 474 06, for the involved 2010 Mazda CX-9, our policyholder carried medical payments coverage with limits of $5,000 per person and did not carry uninsured motorist coverage. We have included a copy of the policy, along with the rejection form with this correspondence.
>
> We are working to confirm if there is any additional overage that will apply to your client. Once we conclude our investigation, we will forward copies of the remaining applicable policy documents for your review.
>
> Please let us know if you anticipate presenting an underinsured motorist claim for your client.

Docket No. 42 at 3, ¶ 9; Docket No. 43 at 3, ¶ 9; Docket No. 42-6.[6] On May 9, 2023, Ms. Springer sent plaintiff's counsel a letter that reads as follows:

> To Whom It May Concern:
>
> We received notice of a claim for Brian Fegan and I have been assigned the handling of Your Client's Underinsured motorist coverage for this loss.

---

[5] For the reasons stated *supra* n.2., the Court will deem the text of the April 7, 2023 letter as undisputed. *See* Docket No. 42-4 at 1.

[6] The parties dispute the characterization of the April 12, 2023 letter. *See* Docket No. 42 at 3, ¶ 9 (asserting that the April 12, 2023 letter explained that "[Ms. Springer] was working to see if Ms. Fegan had UIM coverage with State Farm"); Docket No. 43 at 3, ¶ 9 (asserting that, in the April 12, 2023 letter, Ms. Springer "contends in multiple ways that State Farm does not provide underinsured motorist coverage to Ms. Fegan"). However, the parties do not disagree on the text of the April 12, 2023 letter. *See* Docket No. 42-6. Accordingly, the Court will deem the text of the letter as undisputed.

> Currently, our records reflect there are two vehicle(s) in the household. The vehicle(s) and the related limits are as follows:
>
> > 2010 Mazda CX-9 / Policy Number 4186 474 06 / Limit(s) $0 per person, subject to a per accident limit of $0
> > 2007 Hyundai Santa Fe / Policy Number 4057 372 06 / Limit(s) $250,000 per person subject to a per accident limit of $500,000
>
> A copy of the declarations page for each policy listed above is included . Based on the listed policies, the total Underinsured motorist coverage for this loss is subject to all policy language and provision.
>
> In addition, our records indicate the following individuals are insured and household residents:
>
> > Brian Fegan
>
> Please review and notify me in the event the above information is incorrect or if anyone residing in your client's household has other vehicles or insurance that may provide additional coverage for this loss.

Docket No. 42 at 3, ¶ 11; Docket No. 43 at 3-4, ¶ 11; Docket No. 42-8.[7] On May 10, 2023, Ms. Fegan's counsel sent a letter making a demand for UIM benefits under Ms. Fegan's insurance policy. Docket No. 42 at 3, ¶ 12.[8] On May 12, 2023, Ms. Springer sent a letter to Ms. Fegan's counsel requesting that Ms. Fegan execute an "Authorization for [Release] of Information" and to fill out a "Medical Provider/Health Carrier Information" form. *Id.*, ¶ 14. Ms. Fegan never provided State Farm with executed copies of the requested documents. *Id.*, ¶ 15. In the May 12, 2023 letter, Ms.

---

[7] Because the parties dispute the characterization of the May 9, 2023 letter, but not the text, *see* Docket No. 42 at 3, ¶ 11; Docket No. 43 at 3-4, ¶ 11, the Court will deem the text of the May 12, 2023 letter, Docket No. 42-8 at 1, as undisputed for the reasons discussed *supra* n.2.

[8] Ms. Fegan disputes this assertion, denying that "this letter is the first time a claim for underinsured motorist (UIM) coverage is made." Docket No. 43 at 4, ¶ 12. This is not responsive to State Farm's assertion. Accordingly, the Court deems this fact as admitted.

Springer noted that plaintiff's UIM policy contained a condition requiring Ms. Fegan to obtain State Farm's written consent prior to settling with the tortfeasor. *Id.*, ¶ 16.

Ms. Springer sent another letter on May 12, 2023. *Id.* at 4, ¶ 17. In this letter, Ms. Springer noted that her May 9, 2023 letter to Ms. Fegan explained that State Farm was working to determine if there was other coverage available to Ms. Fegan. *Id.*, ¶ 18. Ms. Springer also noted that State Farm confirmed one of the policies listed in the May 9, 2023 letter carried UIM coverage of up to $250,000 per person as applicable to Ms. Fegan. *Id.*

On July 19, 2023, Ms. Fegan's UIM claim was assigned to Claim Specialist Cindy Raines, and State Farm sent notice to Ms. Fegan's counsel of the reassignment. *Id.*, ¶ 20. On July 20, 2023, Ms. Raines sent Ms. Fegan's counsel a letter denying the UIM claim, explaining that State Farm evaluated the UIM claim, using the bills and records submitted by Ms. Fegan's counsel, and found that it appeared Ms. Fegan would be compensated by Ms. May's policy limits. *Id.*¶ 21.

On March 14, 2024, Ms. Raines acknowledged Ms. Fegan's new UIM demand and raised concerns regarding the mechanism of injury and the necessity, relatedness, and reasonableness of medical treatment. *Id.* at 5, ¶ 24.[9] Ms. Raines requested

---

[9] It is not clear from the parties' briefs what accounted for the gap of time between Ms. Raines's July 20, 2023 letter denying Ms. Fegan's claim for UIM benefits and Ms. Raines's March 14, 2024 letter that questioned the mechanism for Ms. Fegan's injuries, noted that an IME may be necessary, and re-requested Ms. Fegan's medical documents and her authorization for the release of information. However, the complaint indicates that Ms. Fegan's case against Ms. May was ongoing during this time. Specifically, on December 6, 2023, Ms. Fegan sent a letter to State Farm asking that it pay Ms. May's policy limits in connection to her third-party claim. Docket No. 4 at 7, ¶ 37. On January 26, 2024, State Farm agreed. *Id.*, ¶ 38. On February 2, 2024, in connection to Ms. Fegan's first-party claim, Ms. Fegan renewed her request that State Farm provide UIM coverage. *Id.*, ¶ 40; *see also* Docket No. 43-28. On February 20,

complete treatment records for five years preceding the accident, re-requested the medical provider list and authorization for release of information, and noted an IME might be needed. *Id.* In response, Ms. Fegan's counsel's did not send the requested information, instead stating that Ms. Fegan had already produced the records in Ms. Fegan's third-party case against Ms. May. *Id.*, ¶ 25. On May 2, 2024, Ms. Raines updated the injury evaluation report to include additional information. *Id.*, ¶ 27.[10]

In State Farm's evaluation of Ms. Fegan's first-party claim, it noted "vehicle damage very minor" and "V2 moderate damage." Docket No. 43 at 12, ¶ 21.[11] Regarding Ms. Fegan's injuries, State Farm noted "cervical sprain/strain" and "Cervical Retrolisthesis: questionable." *Id.*, ¶ 22. State Farm documented "right arm sprain/strain: MOI questionable." *Id.* at 13, ¶ 23. State Farm assigned to Ms. Fegan's claim a value range that started at $47,559.16. *Id.*, ¶ 26. State Farm assigned a value

---

2024, Ms. Raines asked for additional medical documentation from Ms. Fegan. Docket No. 4 at 7, ¶ 41.

[10] Ms. Fegan disputes this statement, arguing that Ms. Raines documented that she was "only considering day of treatment and 2 radiology bills." Docket No. 43 at 7, ¶ 27. However, the evidence cited by the parties shows that the May 2, 2024 update, while it did include Ms. Raines's statement noted by Ms. Fegan, also included additional information that Ms. Raines had obtained. *See* Docket No. 42-19 at 2-6. Ms. Fegan disputes this assertion on the basis that Ms. Raines failed to consider information that Ms. Fegan's counsel had provided in connection to the third-party case, but does not dispute that Ms. Raines updated the evaluation report. *See* Docket No. 43 at 7, ¶ 27.

[11] State Farm disputes Ms. Fegan's assertions of fact "¶¶ 21-26 . . . because they are arguments and characterizations, not facts." Docket No. 46 at 5. The Court agrees that Ms. Fegan makes improper legal arguments in these assertions of fact. For instance, Ms. Fegan contends that State Farm "knowingly or recklessly downplayed the severity of the accident" and Ms. Fegan's injuries. *See* Docket No. 43 at 12, ¶¶ 21-26. However, Ms. Fegan also asserts that State Farm made certain statements in its evaluation of Ms. Fegan's claim. *See id.* The Court finds that these statements are proper assertions of fact that it will deem as admitted.

of $0 to Ms. Fegan's future medical bills and a value of $0 to her future pain/suffering. *Id.*, ¶¶ 24-26.

On July 17, 2024, plaintiff filed the instant suit against State Farm. Docket No. 42 at 5, ¶ 28. On July 7, 2025, Ms. Fegan was re-evaluated by Dr. Johnson, who noted that Ms. Fegan "has good day[s] and bad days. Now she has continued numbness and tingling extending down her arm with mild shoulder pain." Docket No. 43 at 11, ¶ 15. Dr. Johnson conducted a physical evaluation and noted, "She has forward elevation to 145 degrees versus 165 degrees. She has relatively good strength of 4+ out of 5. She has a positive impingement and O'Brien's. She has a positive Spurling's producing posterior shoulder pain and numbness and tingling distally." *Id.*, ¶ 16. Dr. Johnson ordered an MRI of Ms. Fegan's right shoulder, which showed a rotator cuff tear." *Id.*, ¶ 17. On April 16, 2025, an IME was performed by Dr. Rebekah Martin.[12]

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.

[12] The parties do not set forth as an undisputed fact whether and when an IME was ultimately performed. Nevertheless, the Court finds that the parties do not dispute that the IME occurred on April 16, 2025. *See* Docket No. 42 at 13; Docket No. 43 at 14, ¶ 29; *see also* Docket No. 43-21.

*Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). A movant who bears the burden at trial must submit evidence to establish the essential elements of its claim. *Harper v. Mancos Sch. Dist. RE-6*, 837 F. Supp. 2d 1211, 1217 (D. Colo. 2011).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

## III. ANALYSIS

Ms. Fegan brings claims for (1) breach of contract; (2) common law bad faith breach of contract; and (3) bad faith breach of contract pursuant to Colo. Rev. Stat.

§§ 10-3-1115 and 10-3-1116. Docket No. 4 at 9-14. State Farm moves for summary judgment on plaintiff's bad faith claims, Claims Two and Three. Docket No. 42 at 1.

### A. Claim Three – Statutory Bad Faith

In Claim Three, Ms. Fegan asserts that State Farm has "denied and delayed payment of underinsured motorist benefits . . . without a reasonable basis for its actions." Docket No. 4 at 13, ¶ 65. Specifically, Ms. Fegan claims that State Farm unreasonably delayed benefits when Ms. Springer communicated that UIM coverage was not available to Ms. Fegan. *See id.* at 4, 5, ¶¶ 24-26, 28-20. Ms. Fegan claims that State Farm "forced Mrs. Fegan to file a lawsuit against the at-fault party to recover benefits owed and defended the at-fault driver through the entire of course of litigation (trial had been scheduled for April 9, 2024) until agreeing to pay Ms. May's policy limits of $50,000." *Id.* at 7, ¶ 40. Ms. Fegan alleges that, as of the date of filing the complaint, "State Farm has not further responded to Mrs. Fegan's request to pay her underinsured motorist claim." *Id.* at 9, ¶ 45.

State Farm contends that it is entitled to summary judgment on Ms. Fegan's statutory bad faith claim because State Farm acted with a reasonable basis throughout its dealings with Ms. Fegan. *See* Docket No. 42 at 9-18. Specifically, State Farm contends that Ms. Springer did not misrepresent that Ms. Fegan was not entitled to UIM coverage. *Id.* at 9-10. State Farm also argues that, "[t]o the extent that Plaintiff attempts to sue State Farm for actions taken in its capacity as the third-party insurer of Ms. May, that suits violates Colorado's prohibition on direct actions by third-party plaintiffs against liability insurers." *Id.* at 10. State Farm contends that it owed no duty to Ms. Fegan in handling her third-party claim. *Id.* at 10-11. In addition, State Farm

argues that, "[t]he fact that Plaintiff chose to sue instead of seeking a compromise settlement with her insurer is not sufficient evidence to sustain her bad faith or statutory unreasonable delay claims." *Id.* at 12. Finally, State Farm argues that it cannot have acted unreasonably in light of Ms. Fegan's failure to produce the requested medical documentation. *See id.* at 12-14.

Ms. Fegan responds that, "[w]hile an insurer's conduct is typically evaluated based upon information it had available to it at the time of its decision, that does not negate the duty to investigate." Docket No. 43 at 16 (internal citation omitted). Plaintiff also argues that State Farm failed to promptly settle Ms. Fegan's third-party claim "despite liability being undisputably clear under Holly May's third-party coverage, in order to influence the settlement under Mrs. Fegan's first-party coverage." *Id.* at 17. Ms. Fegan claims that State Farm unreasonably disregarded the severity of the accident and Ms. Fegan's injuries by making statements in its evaluation that were contradicted by evidence in the record. *See id.* at 17-19. Ms. Fegan states that State Farm's delay in pursuing an IME demonstrates unreasonableness and that "State Farm is incorrect that missing records justify its conduct." *Id.* at 19-20. Finally, Ms. Fegan claims that she provided "full discovery" to State Farm in the third-party case. *Id.* at 20.

Pursuant to § 10-3-1115, an insurer may not "unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant." Colo. Rev. Stat. § 10-3-1115(1)(a). An insurer's conduct is unreasonable "if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action." Colo. Rev. Stat. § 10-3-1115(2). The determination of whether an insurer has breached its duties to the insured is one of reasonableness under the

circumstances. *Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 523 (Colo. App. 2008). In other words, the question is whether a reasonable insurer under similar circumstances would have denied or delayed payment of the claim. *Id.* The reasonableness of an insurer's conduct must be determined objectively, based on proof of industry standards. *Schultz v. GEICO Cas. Co.,* 429 P.3d 844, 847 (Colo. 2018). "These standards may be established through expert opinions or state law." *Peden v. State Farm Mut. Auto. Ins. Co.*, 841 F.3d 887, 890 (10th Cir. 2016) (applying Colorado law). Whether an insurer's conduct was reasonable under the circumstances is ordinarily a question of fact for the jury when conflicting evidence exists. *Zolman v. Pinnacol Assurance*, 261 P.3d 490, 497 (Colo. App. 2011). However, in appropriate circumstances, as when there are no genuine disputes of material facts, reasonableness may be decided as a matter of law. *COPIC*, 192 P.3d at 524.

The Court first turns to Ms. Fegan's contention that there is a genuine dispute of material fact regarding her statutory bad faith claim because "State Farm knowingly or recklessly disregarded Mrs. Fegan's claimed injuries and damages until July 19, 2023, despite learning of the UIM claim September 17, 2022, which was unreasonable under the circumstances." *See* Docket No. 43 at 16-17. Although the parties dispute when Ms. Fegan first made a demand for UIM benefits, it is undisputed that Ms. Fegan's first letter in the first-party claim was the April 7, 2023 letter received by Ms. Springer, the UIM adjustor. Ms. Fegan fails to assert facts that demonstrate she took any earlier action in the first-party claim. Ms. Fegan's assertion that State Farm learned of the UIM claim on September 17, 2022 is improperly asserted in violation of the Court's Practice

Standards.[13] Moreover, even if the Court did consider this assertion, it lacks evidentiary support. Ms. Fegan cites a September 17, 2022 State Farm log note about the September 16, 2022 loss. *See* Docket No. 43 at 16-17 (citing Docket No. 43-4). There is no mention of UIM benefits in this document. To the extent that Ms. Fegan contends that State Farm had an obligation to determine whether Ms. Fegan was entitled to UIM benefits as soon as it learned of the collision, and before Ms. Fegan filed a claim for UIM benefits, the Court rejects that argument. *See Iwaskow v. Safeco Ins. Co. of Am.*, No. 21-cv-00005-PAB-SBP, 2023 WL 6376712, at *4 (D. Colo. Sept. 29, 2023) ("Courts have ruled that an insurer is not under a duty to investigate before receiving a claim for payment despite being informed of the probability of plaintiff making a UIM claim.") (collecting cases).

Moreover, the undisputed facts show that State Farm did not "disregard" Ms. Fegan's claim for UIM benefits. After Ms. Fegan's April 7, 2023 letter, Ms. Springer sent an April 12, 2023 letter stating that there was no UIM coverage for the involved vehicle, but that State Farm was working to confirm whether Ms. Fegan had additional coverage under her policy. Docket No. 42 at 3, ¶ 9. On May 9, 2023, Ms. Springer sent another letter listing Ms. Fegan's policies, stating that UIM coverage is subject to all policy language and provisions, and that Ms. Fegan should notify State Farm in the event that

[13] Pursuant to the Court's Practice Standards, "[i]f the party opposing the motion believes that there exist additional disputed questions of fact . . . , the party shall, in a separate section of the party's brief styled 'Statement of Additional Disputed Facts,' set forth . . . each additional, material disputed fact which undercuts movant's claim that it is entitled to judgment as a matter of law." Practice Standards (Civil Cases), Judge Philip A. Brimmer, § III.F.3.b.v. Because Ms. Fegan asserted this fact in the argument section of her brief, rather than the facts section, State Farm had no obligation to admit or deny the assertion. Thus, the Court will not consider this factual assertion.

any information was incorrect. *Id.*, ¶ 11; Docket No. 43 at 3-4, ¶ 11. After Ms. Fegan made a demand for UIM benefits on May 10, 2023, Ms. Springer acknowledged the demand and requested Ms. Fegan to return an Authorization for Release of Information and to fill out a Medical Provider/Health Carrier Information form. Docket No. 42 at 3, ¶¶ 13-14. Ms. Fegan never returned these documents. *Id.*, ¶ 15. In Ms. Springer's May 12, 2023 letter, Ms. Springer noted that her May 9, 2023 letter to Ms. Fegan explained that State Farm was working to determine if there was other coverage available to Ms. Fegan. *Id.* at 4, ¶ 18. Ms. Springer also noted that State Farm confirmed that one of the policies listed in the May 9, 2023 letter carried UIM coverage of up to $250,000 per person as applicable to Ms. Fegan. *Id.* Accordingly, the Court finds no reasonable jury could find that State Farm unreasonably delayed consideration of Ms. Fegan's UIM claim between April 7, 2023 and July 19, 2023.[14]

Next, Ms. Fegan argues that there is a genuine dispute of material fact whether State Farm failed to promptly settle Ms. Fegan's third-party claim "in order to influence the settlement under Ms. Fegan's first-party coverage," especially given that liability was "undisputably clear under Holly May's third-party coverage." Docket No. 43 at 17. "When both the tortfeasor and the injured party are insured by the same insurer . . . the question whether the insurer owes a duty of good faith and fair dealing to the injured party becomes more difficult. Nevertheless, courts almost universally hold that the insurer does not owe such a duty to the injured party when she asserts a third-party

[14] Based on this course of conduct, the Court finds that no reasonable jury could conclude that State Farm misrepresented to Ms. Fegan that UIM benefits were unavailable. Moreover, Ms. Fegan does not address her "misrepresentation" theory underlying her statutory bad faith claim in her response. *See* Docket No. 43 at 15-20.

claim against the tortfeasor." *Galusha v. Farmers Ins. Exch.*, 844 F. Supp. 1401, 1403 (D. Colo. 1994) (applying Colorado law). The Court agrees with the majority position. Thus, while State Farm owed a duty of good faith and fair dealing to Ms. Fegan in the context of Ms. Fegan's first-party claim, State Farm owed no such duty to Ms. Fegan in her third-party claim wherein State Farm owed a duty of good faith to Ms. May, not Ms. Fegan. Because, as a matter of law, State Farm did not owe a duty of good faith to Ms. Fegan in the third-party claim, Ms. Fegan cannot base her statutory bad faith claim on State Farm's conduct in the third-party claim.[15]

Ms. Fegan also argues that State Farm acted without a reasonable basis in analyzing her claim for UIM benefits because State Farm's valuation disregarded certain evidence, such as Ms. Fegan's testimony of her injury and the collision and medical records. *See* Docket No. 43 at 18-19. It is unclear which valuation Ms. Fegan is challenging. Specifically, it is unclear whether Ms. Fegan is challenging the July 20, 2023 denial of UIM benefits or State Farm's March 2024 decision to request an IME upon questioning the mechanism of Ms. Fegan's injuries. As Ms. Raines's valuation

[15] It appears that Ms. Fegan does not base her claim for any unreasonable delay of UIM benefits on the passage of time from July 20, 2023 to March 14, 2024. Rather, Ms. Fegan takes issue with Ms. Raines's delay in analyzing the UIM claim on July 19, 2023, which ultimately led to the July 20, 2023 denial, and the delay in conducting the IME. *See* Docket No. 43 at 18-19. Thus, the Court does not consider the period of time between July 20, 2023 and March 14, 2024 to be the basis for Ms. Raines's unreasonable delay claim. Moreover, even if Ms. Fegan did argue that the delay between July 20, 2023 and March 14, 2024 constitutes unreasonable delay, the Court would reject this argument. As discussed above, this delay, which was attributable to litigation of Ms. Fegan's third-party claim, cannot be the basis for Ms. Fegan's statutory bad faith claim as State Farm did not owe Ms. Fegan a duty of good faith in the third-party action.

was the basis for the July 2023 and March 2024 decisions, the Court will consider Ms. Fegan's argument as it relates to both decisions.

Ms. Fegan challenges portions of the valuation that she contends led State Farm to unreasonably conclude that her injuries caused by the collision were within Ms. May's policy limits of $50,000. Ms. Fegan argues that it was unreasonable for the valuation to document that cervical retrolisthesis was "questionable" where the September 16, 2022 x-ray showed grade 1 retrolisthesis. *See* Docket No. 43 at 17-18. However, it is undisputed that the findings from the September 16, 2022 x-ray showed "[t]race retrolisthesis of C5 on C6 and may be related to *degenerative* disc space narrowing at this level." *Id.* at 9, ¶ 7 (emphasis added). Ms. Fegan challenges the valuation's finding that it was "questionable" whether Ms. Fegan's right arm pain was caused by the accident; however, it is undisputed that Ms. Fegan had a 10-year history of right shoulder pain. Docket No. 42 at 1, ¶ 1. Thus, no reasonable jury could conclude that State Farm lacked a reasonable basis to question whether Ms. Fegan's retrolisthesis and right arm injuries were caused by the collision. While Ms. Fegan claims that State Farm had a duty to investigate her claim, *see* Docket No. 43 at 16, Ms. Fegan fails to identify what additional information State Farm could have discovered that would lead a reasonable jury to believe that State Farm's UIM denial was objectively unreasonable. *See Vansky v. State Farm Auto. Ins. Co.*, No. 20-cv-01062-PAB-NRN, 2022 WL 900160, at *7 (D. Colo. Mar. 28, 2022) (finding that, "although plaintiff argues that defendant's investigation of his claim was inadequate, plaintiff has not identified what further investigation could or would have uncovered" and "Plaintiff therefore has not shown a genuine dispute of material fact that defendant unreasonably delayed or

denied his UIM claim"). Accordingly, the Court finds that no reasonable jury could conclude that State Farm lacked a reasonable basis to deny Ms. Fegan's claim for UIM benefits in July 2023 where Ms. Fegan's medical history provided a reasonable basis that her claimed injuries were not caused by the collision.

Turning to Ms. Fegan's challenge of State Farm's decision to seek an IME in March 2024, no reasonable jury could conclude that this decision lacked a reasonable basis. As discussed above, no reasonable jury could conclude that State Farm lacked a reasonable basis for its determination that Ms. Fegan's accident-related injuries were compensated by Ms. May's policy limits. Similarly, no reasonable jury could conclude that State Farm lacked a reasonable basis for its determination that an IME was necessary given it being questionable whether Ms. Fegan's claimed injuries were caused by the accident. *See Crimaldi v. State Farm Mut. Auto. Ins. Co.*, No. 24-cv-00075-PAB-NRN, 2026 WL 850479, at *7 (D. Colo. Mar. 27, 2026) ("no reasonable juror could find that it was objectively unreasonable for State Farm to delay payment of benefits until it could request its own IME"). It was appropriate for State Farm, upon questioning the mechanisms of injuries claimed by Ms. Fegan, to seek an IME. As noted by the Colorado Court of Appeals,

> there is social utility in allowing no-fault insurance companies to request independent medical examinations performed by physicians of their choice. Insurance companies must be accorded wide latitude in their ability to investigate claims and to resist false or unfounded efforts to obtain funds not available under the contract of insurance. Independent medical examinations at the insurance company's request allow it to make informed decisions about whether to deny benefits based on a physical or psychological condition.

*Martinez v. Lewis*, 942 P.2d 1219, 1224 (Colo. App. 1996) (internal quotations, alternations, and citation omitted). Accordingly, the Court finds that no reasonable jury

could conclude that it was unreasonable for Ms. Raines to question the cause of Ms. Fegan's injuries, order an IME, and await the results of that IME.[16]

Finally, Ms. Fegan argues that there is a dispute as to whether State Farm unreasonably delayed payment of UIM benefits because State Farm, despite planning to proceed with the IME on March 13, 2024, did not conduct the IME until over a year later. Docket No. 43 at 19. Ms. Fegan contends that the fact State Farm was "missing records" does not justify its conduct. *Id.* Ms. Fegan did not provide an authorization form or a chart of her medical providers in response to either Ms. Springer or Ms. Raines's request. However, Ms. Fegan contends that State Farm had all the information it needed to proceed with an IME because Ms. Fegan had provided the necessary information to State Farm in connection to Ms. Fegan's third-party claim. *Id.* at 19-20. The Court finds that no reasonable jury could conclude that it was objectively unreasonable for State Farm to decline to proceed with the IME where Ms. Fegan had

---

[16] Ms. Fegan does not challenge Dr. Martin's findings in the IME; therefore, the Court does not find that Ms. Fegan's bad faith claim is predicated on State Farm's reliance on Dr. Martin's report. However, Ms. Fegan does argue that Dr. Martin "missed" Dr. Johnson's "finding through MRI that surgery is required to repair Mrs. Fegan's right torn rotator cuff." Docket No. 43 at 19. Dr. Johnson's findings do not show that Dr. Martin's report, and thus State Farm's reliance on the report, was unreasonable for several reasons. First, Dr. Johnson's finding was made on July 7, 2025, which was months after the IME was performed by Dr. Martin. *See* Docket No. 43-18. Second, Dr. Johnson's report says nothing as to the cause of Ms. Fegan's torn rotator cuff. *See id.* Third, Dr. Johnson did not find that surgery was "required" to fix Ms. Fegan's torn rotator cuff. Rather, he found, given that Ms. Fegan's progress through physical therapy "has plateaued," she has "3 options":

> 1 is to continue physical therapy and anti-inflammatories. The next option is to consider PRP, physical therapy and anti-inflammatories. The third option is to consider surgery.

*Id.* at 5.

failed to provide authorization for the release of her medical information.[17] Furthermore, Ms. Fegan fails to explain why a physician would perform a medical examination based on consent granted in connection with a different claim asserted against the tortfeasor.[18]

Because Ms. Fegan fails to raise a genuine dispute of material fact that supports State Farm acted without a reasonable basis in delaying or denying the payment of UIM

[17] Although not asserted as fact in the briefing, the Court notes that, on May 12, 2023, Ms. Springer stated in a letter to Ms. Fegan that:

> As you have not provided the records or bills directly to the above claim, but have referenced them being provided in the liability claim, 75 39H3 99M, we are taking your correspondence as permission for us to utilize those records provided to the bodily injury claim to evaluate your client's underinsured motorist claim. If you did not intend to provide that permission, please provide the records and bills directly to this underinsured motorist claim for review.

Docket No. 42-12. While it appears, through her silence, Ms. Fegan gave State Farm permission to use the records from her third-party claim to evaluate her first-party UIM claim, Ms. Fegan does not make this argument. Moreover, Ms. Fegan cites no facts that would lead a reasonable jury to conclude that, even if State Farm and the physician performing the IME had the records produced by Ms. Fegan in the third-party claim, that it was objectively unreasonable for State Farm to seek authorization to obtain additional medical records and for the physician performing the IME to have access to such information. *See Burns v. Am. Fam. Mut. Ins. Co.,* No. 20-cv-02682-RBJ, 2022 WL 22310207, at *4 (D. Colo. Nov. 21, 2022) ("Plaintiffs have provided no authority for the proposition that it is beneath the standard of care or otherwise improper for an insurer to first ask the insured to provide medical records, and then to obtain them via authorization for release of records as necessary.").

[18] Ms. Fegan also asserts that "Cindy Raines testified that she was trained to set a calendar reminder for 365 days out from each time she gets in the claim, and unless another event prompts her to access the claim, she might not do so for 365 days." Docket No. 43 at 15, ¶ 34. To the extent that Ms. Fegan argues that this demonstrates State Farm unreasonably delayed in scheduling the IME, Ms. Fegan fails to cite an industry standard that would make this conduct unreasonable. Specifically, Ms. Fegans fails to cite an industry standard that shows it was unreasonable for State Farm to set a follow-up reminder for 365 days to schedule Ms. Fegan's IME in the absence of Ms. Fegan providing the requested authorization and medical information. Moreover, there are no facts demonstrating that Ms. Raines used this practice in the context of Ms. Fegan's claim.

benefits, the Court will grant summary judgment for State Farm on Ms. Fegan's statutory bad faith claim.

### B. Claim Two – Common Law Bad Faith

To prevail on a claim for bad faith delay or denial of insurance benefits under Colorado common law, a plaintiff must establish that her insurer (1) acted unreasonably under the circumstances; and (2) knew of, or had reckless disregard for, the unreasonableness of its actions. *Goodson v. Am. Standard Ins. Co. of Wisc.*, 89 P.3d 409, 415 (Colo. 2004). "The only element at issue in the statutory claim is whether an insurer denied benefits without a reasonable basis." *Cooper v. Shelter Gen. Ins. Co.*, 653 F. Supp. 3d 873, 878 (D. Colo. 2023) (alteration and citation omitted). "By contrast, to prove a first-party claim of common law bad faith, a plaintiff must show not only that the insurer's conduct in processing or denying a valid claim was unreasonable but also that the insurer knew its conduct was unreasonable or recklessly disregarded the unreasonableness of its conduct." *Id.* (citing *Travelers Insurance Co. v. Savio*, 706 P.2d 1258, 1275–76 (Colo. 1985)). "Accordingly, a claim of common law bad faith imposes a more exacting standard of proof than a statutory claim." *Id.* (citation omitted)); *Kisselman v. Am. Family Mut. Ins. Co.*, 292 P.3d 964, 975 (Colo. App. 2011) (the "burden of proving th[e] statutory claim is less onerous than that required to prove a claim under the common law for breach of the duty of good faith and fair dealing").

When analyzing Ms. Fegan's statutory bad faith claim, the Court determined that she failed to show a genuine dispute of material fact as to whether State Farm's conduct was unreasonable. Thus, Ms. Fegan has not satisfied the first element of a common law bad faith claim, and the Court will dismiss this claim as a result. *See*

*Garcia v. State Farm Mut. Auto. Ins. Co.*, No. 21-cv-01504-CMA-MEH, 2021 WL 5770229, at *3 (D. Colo. Dec. 6, 2021) (dismissing common-law bad faith claim where plaintiff failed to identify a genuine dispute of material fact regarding defendant's reasonableness); *Stemple v. State Farm Mut. Auto. Ins. Co.*, No. 17-cv-02381-CMA-STV, 2019 WL 2866587, at *5 n.5 (D. Colo. July 3, 2019) ("Plaintiff cannot establish the first element of her bad faith claim, rendering it unnecessary for the Court to analyze the second element of the claim.").

### C. 702 Motion

In addition to seeking summary judgment, State Farm seeks to exclude several opinions from the report of John Kezer, Docket No. 41-2, Ms. Fegan's expert on insurance industry standards. Docket No. 41. Mr. Kezer's report consists of opinions on whether State Farm violated various industry standards, which relates to whether State Farm acted in bad faith. *See* Docket No. 41-2 at 10. Because the Court has granted summary judgment as to Ms. Fegan's bad faith claims, Mr. Kezer's report is irrelevant. Accordingly, the Court will deny State Farm's 702 motion as moot.

### D. State Farm's Objection to the Magistrate Judge's Discovery Disputes Order

On November 4, 2025, the magistrate judge issued her ruling regarding certain discovery disputes raised by the parties. Docket No. 34. In her order, the magistrate judge (1) granted Ms. Fegan's request for claim file notes in the related third-party action; (2) denied Ms. Fegan's request to depose Mr. Clarkson, the claims adjustor in the third-party action; and (3) granted in part and denied in part Ms. Fegan's request for information concerning Ms. Raines's performance reviews while employed by State Farm. *Id.* at 25.

On November 18, 2025, State Farm filed an objection to the November 4, 2025 order. Docket No. 35. State Farm argues that the magistrate judge clearly erred in ordering State Farm to produce liability claim notes from the third-party action. *Id.* at 4. State Farm also argues that it was clear error to order the production of Ms. Raines's deposition information "relating to other claims or cases not at issue in this case." *Id.*

Ms. Fegan responds that the third-party claims notes are "relevant to the claims and defenses of the present action – i.e. whether State Farm acted in bad faith as to its first-party insured, plaintiff Michelle Fegan, in its handling of the liability claim involving third-party at-fault driver, Holly May." Docket No. 39 at 2. Ms. Fegan contends that the complaint "specifically alleges State Farm slow-walked the liability claim to unreasonably delay paying the bad faith claim, making the liability log notes relevant to the present bad faith action." *Id.* at 3 (emphasis omitted). Regarding the deposition information, Ms. Fegan argues that they are relevant for "impeachment because State Farm contends it reasonably trained Cindy Raines and reasonably handled Mrs. Fegan's claim, which is likely undermined by the pattern of bad faith allegations against Cindy Raines." *Id.* at 6.

The district court reviews a magistrate judge's order on a non-dispositive motion under a "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). Pursuant to Fed. R. Evid. 401, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." As discussed above, Ms. Fegan argues that claim notes from the third-party action and Ms. Raines's deposition information are relevant for purposes of her bad faith claims. Because the Court will

dismiss Ms. Fegan's statutory and common law bad faith claims, the Court finds that this evidence is irrelevant. The Court will sustain State Farm's objection.

## IV. CONCLUSION

Therefore, it is

**ORDERED** that State Farm Automobile Insurance Company's Motion for Partial Summary Judgment [Docket No. 42] is **GRANTED**. It is further

**ORDERED** that the Motion to Exclude Opinions of John Kezer Pursuant to FRE 702 [Docket No. 41] is **DENIED as moot**. It is further

**ORDERED** that Ms. Fegan's second and third claims for relief are **DISMISSED with prejudice**. It is further

**ORDERED** that Defendant's Fed. R. Civ. P. 72 Objection to ECF No. 34 Order Resolving Discovery Disputes [Docket No. 35] is **SUSTAINED**.

DATED August 31, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge